

Wilmer Mechlin, Washington, D. C., attorney of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; R. E. Martin, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and RE, Judge, United States Customs Court, sitting by designation.

58 CCPA

**Application of Virgil L. FRANTZ.**
**Patent Appeal No. 8359.**

United States Court of Customs and Patent Appeals.

Dec. 10, 1970.
Rehearing Denied Jan. 28, 1971.

BALDWIN, Judge.

Frantz appeals from the decision of the Patent Office Board of Appeals which affirmed the examiner's rejection of claims 7–9 of his application [1] as obvious in view of the prior art under 35 U.S.C. 103.

## THE INVENTION

The invention relates to an assembly including a pivoted member which can be held by friction in a selected position despite vibrations to which its mounting may be exposed in service. A windshield wing assembly for a locomotive which

1. Serial No. 516,184, entitled "Pivoted Member Assembly", filed October 22, 1965, as a continuation of an application filed July 15, 1960. Claims 1–5 stand allowed.

embodies the invention is shown in side, plan and fragmentary vertical sectional views on an enlarged scale in Figures 1, 4, and 5, respectively:

FIG. 4

FIG. 1

[A3254]

FIG. 5

The drawings show a windshield wing 1 comprising a glass member 2 mounted in a frame 3. The frame is made of aluminum or stainless steel and comprises a vertical front piece 4 and upper and lower end pieces 5 and 6. Vertically aligned upper and lower mounting brackets 21 and 22, respectively, attached to the locomotive cab, support pivots designated 16 in Figure 5. Each of the pivots 16 includes a pivot pin (20 and 28) having a tapered portion 19 fitting into a frusto-conical recess or seat 18 in a bushing 17 of tough, resilient material which is embedded in the vertical element 4 of the frame 3. In the lower pivot, the

pin 20 has a second tapered end portion fitting into a similar tapered recess 18 in a plug 17 embedded in the lower mounting bracket 22.

The upper pivot 16 differs from the lower pivot in a manner made apparent by the following description in the specification:

One of the pivots 16, here the upper pivot, is designed not only to serve as a pivot but also to enable the friction restraining swinging of the pivoted member 1 to be varied to suit the needs of a particular installation. Although this might be accomplished with a double-ended pivot pin such as that here used in the other or lower pivot, it is preferred that the upper pivot pin 28 have a single tapered end 19 and that the friction bushing for that pivot seat or fit snugly in an upwardly opening socket, pocket or seat 29 of corresponding configuration in the upper end piece 5 of the frame 3. In lieu of a second tapered end, the pivot pin 28 has as its opposite end an out-of-round, preferably square or rectangular head 30 which slidably fits or seats in a correspondingly rectangular or otherwise out-of-round slot 31 in the upper mounting bracket 21. Opening downwardly and conveniently extending horizontally through the upper bracket 21, the slot 31 permits the upper pivot pin 28 to be slid or shifted axially relative to the bracket, while enabling the bracket to prevent rotation of the pin incident to pivoting of the pivoted member 1. This non-rotatable connection between the upper pivot pin 28 and upper mounting bracket 21 effectively prevents any rotational or pivotal forces from being transmitted through the pin to an adjusting or cap screw 32 threaded from above through the upper bracket 21 in axial alignment or concentric with the pin and bearing against or engaging the upper surface or end 33 of the head 30, the adjusting screw 32, to hold the pin in correct axial alignment, preferably has a necked or relatively narrow cylindrical tip or lower end por-

tion 34 fitting in a correspondingly configured cavity 35 in the confronting end of the head 30 and itself has a hex or like head 36 suitable for wrench actuation. Preferably, the adjusting screw 32 is lockable against rotation by a lock nut 37 encircling its threaded stem 38 above the bracket 21.

The specification describes the operation of the assembly as follows:

Constructed in the above manner and with its several friction bushings 17 identical for interchangeability, the pivoted member assembly is enabled on actuation of the adjusting screw 32 to vary the penetration of the several tapered ends 19 of the pins 20 and 28 and, by virtue of the wedging action derivable from the taper of these ends, control the friction engendered between the pivot pins and the friction bushings. Depending on the particular installation, the adjustment of the friction in the mounting may be varied from one extreme at which the pivoted member will pivot at the touch of a finger to the other in which the member is actually locked against rotation. This, coupled with the ability of both pivots to be playfree, tight or snug over the range of adjustment and thus prevent a build-up of vibrations in the pivoted member, permits the pivoted member to be held against vibration or other movement relative to its support in any pivoted position in which it is set, despite vibrations in the support and any wind or like pressure to which it may be subjected in service.

In oral argument, appellant stated that he rests his case on claim 7, which claim reads as follows:

7. A pivoted member assembly comprising a pivoted member spaced from a support member, a pair of axially spaced and aligned pivot pins pivotally connecting said members, said pins being tapered one at both ends and the other at one end, a pair of resilient bushings one in each member and each receiving a tapered end of and spacing said one pin from said members, a resilient bushing in said pivoted member

for receiving the tapered end of and spacing said other pin from said member, said other pin having a head non-rotatably received in said support member, and means on said support member and acting against said head for adjusting the friction between both pins and their bushings.

## THE REJECTION

The appealed claims stand rejected as unpatentable under 35 U.S.C. 103 over Ek [2] or Anderson [3] in view of Wolters [4] or Haycock [5] and further in view of Adams. [6]

Ek discloses a pivoted connection between the bowl and cover of a toilet for holding the cover open and restraining its closing, as shown in top plan view with part in section in Figure 2, below:

*Fig. 2.*

[A3255]

A bracket on the cover B has ears D and D' straddling an upright member on the back of the bowl. A pair of pivot pins F, each having a tapered inner end g and a headed outer end and threaded therebetween, are screwed from opposite sides through ears D and D' and have their tapered inner ends g in tapered sockets g' in metal bushings G which are non-rotatably inserted in corresponding sides of the upright member on the bowl. Turning either of the pins F adjusts the

friction between both pins and their bushings. Lock nuts are threaded on pins F on the outer sides of the related ears f to lock the pins against turning after adjustment by engaging the corresponding sides of the ears.

Anderson discloses a pivoted damper for an air register, which damper is mounted between mounting brackets carrying pivot pins that have tapered inner ends, each of which fits in a tapered recess in one of a pair of bushings seated in opposite ends of a tube formed on the damper. One of the bushings is fixed in the damper tube, while the other is urged outwardly by an adjusting spring acting against it and a stop located in the tube between the bushings. As a result of its acting on one bushing directly and on the other through the tube, the spring urges both bushings into engagement with the pins.

Wolters discloses a door hinge employing a hinge pin with tapered ends fitting in tapered sockets on the hinge plates and having an annular shoulder intermediate the ends. The shoulder is said to form part of the bearing surfaces of the hinge.

Haycock also discloses a hinge employing a hinge pin with tapered ends fitting in tapered sockets on the hinge plates and having an intermediate shoulder.

Adams discloses pivot constructions which include a tapered resilient bushing interposed between a pivot member and a sleeve member having a tapered bore for receiving the tapered exterior surface of the bushing.

The grounds of the examiner's rejection, which the board held to be free of reversible error without specific discussion of the references or their application to the claims, are summarized in the Examiner's Answer as follows:

Claims 6 to 9 are considered unpatentable under 35 U.S.C. 103 over Ek

2. Patent No. 735,481, issued August 4, 1903.

3. Patent No. 2,146,391, issued February 7, 1939.

4. Patent No. 90,330, issued May 18, 1869.

5. Patent No. 743,279, issued Nov. 3, 1903.

6. Patent No. 2,698,958, issued January 11, 1955.

or Anderson in view of Wolters or Haycock and further in view of Adams. Both Ek and Anderson show a pivotal mounting having a pair of pivot pins, the tapered ends of which are seated in a bushing and means acting on only one pin for adjusting the friction between both pins and their bushings. This friction adjusting means is shown by Anderson as spring means 34. The spring means acts on only one pivot and is effective to adjust the friction at both pivots. Furthermore, although Ek shows adjusting means at both pivots, the structure is inherently such that adjustment of one pin will affect the frictional engagement of both pins. The provision for making the second pin adjustable appears to be merely for the purpose of extending the range of adjustability.

It is considered obvious to make one of the pivot pins symmetrical about its center in view of the teaching in both Wolters and Haycock that double conical hinge pins are old and known in the art. Since Ek and Anderson teach that there should be a bushing between relatively movable elements when a controllable frictional engagement is desired, it would be obvious to seat both ends of the double conical pin in a bushing. Furthermore, it would be obvious to make the bushings resilient since Adams teaches the desirability of using resilient bushings in a friction pivot.

Turning first to Ek, it is apparent and, in fact, conceded by appellant, that adjustment of the pivot pin at one end there serves to adjust the pressure on both pivots. It follows that modification to employ only one adjustable pivot would be obvious. From either Wolters or Haycock, it is also obvious that the pivot pin for such a non-adjustable pivot might be provided with a taper at both ends instead of just one. While appellant points out that the double-tapered pivot pins of Wolters and Haycock each have a central annular shoulder, at least one side of which serves as a bearing surface, we do not find that material. Ek provides his frictional engagement between the tapered surfaces of the pins and the correspondingly shaped surface of the bushing and it would be obvious to the worker in the art that the provision of a double-tapered pin be accomplished in a manner that provides that same relationship for the tapers at both ends. As to the requirement of the claims that the bushings be resilient, appellant concedes that that feature is obvious, in his own words "eliminating any need to consider Adams on the appeal."

Appellant emphasizes that the adjustment of the amount of friction on the mating surfaces of the Ek pivots is attained by rotating the pivot pin itself while the appealed claims recite that the friction adjustment is made by the action of adjusting means against the head of the pivot pin having only one tapered end, which head is non-rotatively received in the support member. The examiner found no patentable significance in this difference. Thus, he pointed out first that substantially the same result of eliminating any tendency of the pivot pin to back off from a selected adjustment due to activation of the pivoted joint was attained by Ek through the use of lock nuts. He further was of the view that the use of adjusting means acting on a pivot pin is "an old and well known expedient." As an example supporting that view, he pointed out that the pressure on the pivot elements in Anderson is attained by means of a spring acting to bias a bushing, secured against rotation, toward the pin with which it cooperates, which pin is also secured against rotation. We think that the examiner's position is well taken and that the adjustment feature as claimed here by appellant would be obvious to a person of ordinary skill in the art.

Since we find no reversible error in the rejection utilizing Ek as a basic reference, separate discussion of the rejec-

tion utilizing Anderson in that capacity is unnecessary.

The decision of the board is affirmed.

Affirmed.

ALMOND, J., took no part in the consideration or decision of this case.